## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| AMERICAN CITY BUSINESS JOURNALS, INC., | ) ) ) | |
| Plaintiff, | ) ) | Case No. 8:23-cv-978 |
| vs. | ) ) | JURY TRIAL DEMANDED |
| BABCOX MEDIA, INC., LIFESTYLE MEDIA GROUP, LLC, and BRIDGETTE BELLO d/b/a TAMPA BAY BUSINESS & WEALTH MAGAZINE, | ) ) ) ) ) ) | |
| Defendants. | ) | |

_____

## COMPLAINT AND DEMAND FOR JURY TRIAL
_____

Plaintiff American City Business Journals, Inc. ("**ACBJ**" or "**Plaintiff**"), through its undersigned counsel, hereby brings this Complaint and Demand for Jury Trial against Defendants Babcox Media, Inc., Lifestyle Media Group, LLC, and Bridgette Bello d/b/a Tampa Bay Business & Wealth Magazine (collectively, "**Defendants**"), and alleges as follows:

## I.     THE PARTIES

1.     Plaintiff ACBJ is a corporation incorporated and existing under the laws of the State of Delaware, with its principal address located at 120 West

Morehead Street, Suite 400, Charlotte, North Carolina 28202-1874. ACBJ is registered to do business in the State of Florida.

2.     Upon information and belief, Defendant Babcox Media, Inc. ("**Babcox Media**") is a corporation incorporated and existing under the laws of the State of Ohio, with its principal place of business at 3550 Embassy Parkway, Akron, Ohio 44333. Upon information and belief, Babcox Media is registered to do business in the State of Florida and may be served with process through service on its registered agent, CT Corporation System, located at 1200 South Pine Island Road, Plantation, Florida 33324.

3.     Upon information and belief, Defendant Lifestyle Media Group, LLC ("**Lifestyle Media Group**") is a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business located at 3511 West Commercial Boulevard, Fort Lauderdale, Florida 33309.

4.     Upon information and belief, Defendant Bridgette Bello d/b/a Tampa Bay Business & Wealth Magazine ("**Bello**") is a resident of the State of Florida. Upon information and belief, Bello is the CEO and Publisher or Tampa Bay Business & Wealth Magazine ("**TBBW Magazine**"), and maintains TBBW Magazine's business address at 327 11th Avenue North, Suite 1A, St. Petersburg, Florida 33701.

## II.    NATURE OF ACTION

5.    This is an action for trademark infringement, unfair competition, false association and designation of origin, and false advertising, under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et seq*. (the "Lanham Act") and related state causes of action based on Defendants' use of the infringing marks TAMPA BAY BUSINESS WOMEN, TAMPA BAY BUSINESS WOMEN AWARDS, TBBW TAMPA BAY BUSINESS WOMEN, and associated designs, in connection with their advertising, promoting, marketing, offering for sale, and selling their awards program and related services and goods, in violation of ACBJ's established rights.

## III.    JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 as it involves a federal question; under 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) in that this case arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*; and under 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000 and is between citizens of different states.

7.    This Court also has subject matter jurisdiction over the unfair competition claims herein under the provisions of 28 U.S.C. § 1338(b) in that said claims are joined with a substantial and related claim under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

8.     This Court has supplemental jurisdiction over the claims that arise under Florida law pursuant to 28 U.S.C. § 1367(a) because they are substantially related to the claims that arise under the Lanham Act.  Furthermore, this Court has supplemental jurisdiction because both the state and Lanham Act claims are derived from a common nucleus of operative facts and considerations of judicial economy dictate the state and federal issues be consolidated for a single trial.

9.     This Court has personal jurisdiction over Defendants because Defendants purposefully directed their activities at residents of Florida, and the litigation at issue results from injuries to ACBJ that arise from or relate to those activities.

10.     Upon information and belief, this Court has personal jurisdiction over Defendants based on their continuous and systematic minimum contacts with residents of Florida, through the distribution and sale of their goods and/or services in Florida, because Defendants regularly transact business in this District, and/or have offered goods or services in interstate commerce through one or more interactive websites, and have caused injury in this District.

11.     Upon information and belief, this Court further has general personal jurisdiction over Lifestyle Media Group and Bello because they are residents of the State of Florida.

12.     Upon information and belief, this Court has specific personal jurisdiction over Defendants under Florida's long-arm statute, Fla. Stat. § 48.193, because (1) Defendants were or are operating, conducting, engaging in, or carrying on a business or business venture in Florida and/or maintained their principal business offices in Florida; (2) the tortious acts or omissions occurred in Florida; (3) the damages occurred in Florida; and (4) jurisdiction based on Defendants' contacts with Florida is not inconsistent with the Constitution of the State of Florida or the Constitution of the United States.

13.     Venue properly lies in this Division under Middle District of Florida Local Rule 1.04, because Hillsborough County has the greatest nexus with this cause.  Upon information and belief, Bello and TBBW Magazine's principal place of business is in, and the cause of action arose, in Hillsborough County.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because Bello resides in and maintains TBBW Magazine's principal place of business within this District, because a substantial part of the events giving rise to the claims occurred in this District, and because Defendants are subject to this Court's personal jurisdiction.

## IV.   FACTS

**A.   ACBJ's Publications and Associated Intellectual Property Rights**

15.    ACBJ is a multi-platform media company providing in-depth coverage of local business communities and breaking news.

16.    Through print, digital products and face-to-face events, ACBJ offers business leaders many avenues for making connections and gives them a competitive edge locally, regionally and nationally.

17.    ACBJ is the premier media solutions platform for companies that target business decision-makers.

18.    ACBJ is the largest publisher of metropolitan business newsweeklies in the United States.

19.    Under ACBJ's The Business Journals division, ACBJ publishes 45 business publications across the country reaching more than 3.6 million readers each week, including four publications in the State of Florida alone.

20.    Among other publications, the ACBJ's The Business Journal division publishes the Tampa Bay Business Journal ("**TBBJ**")..

21.    ACBJ owns and operates a website for the TBBJ located at the domain <www.bizjournals.com> (the "**Website**").

22.    The TBBJ and Website cover the subject matter of local business communities and breaking news.

23.      For nearly 20 years, ACBJ has published the TBBJ and recognized outstanding women in the Tampa area with the TBBJ's Business Woman of the Year Award.

24.      ACBJ is the owner of common law and registered trademark rights in and to the marks TAMPA BAY BUSINESS JOURNAL, TBBJ, BUSINESS WOMAN OF THE YEAR, and the design marks

  

and

(collectively, the "**TBBJ Marks**") in the U.S. and throughout the world.

25.      Additionally, ACBJ owns the following trademark registrations issued by the U.S. Patent and Trademark Office for marks incorporating the TBBJ Marks, including, among others:



(a)    **Mark**:

**U.S. Registration No.**: 4718915

**Filing Date**: November 22, 2013

**First Use**: November 22, 2013

7

**Use in Commerce**: November 22, 2013

**Registration Date**: April 14, 2015

**Register**: Principal

**Goods and Services covered**: "Magazines, newspapers, journals all on the subject of business" (International Class 16); "Online publications, namely, magazines, newsletters, newspapers and journals all on the subject of business; Non-downloadable electronic publications in the nature of magazines, newsletters, newspapers and journals all on the subject of business" (International Class 41).

A true and correct copy of U.S. Registration No. 4718915 is attached hereto as **Exhibit 1**.  ACBJ's registration is valid and subsisting and has become incontestable.

(b)     **Mark**:  TAMPA BAY BUSINESS JOURNAL

**U.S. Registration No.**: 3574210

**Filing Date**: June 2, 2008

**First Use**: December 26, 2003

**Use in Commerce**: December 26, 2003

**Registration Date**: February 10, 2008

**Register**: Supplemental

**Goods and Services covered**: "business newspaper" (International Class 16).

A true and correct copy of U.S. Registration No. 3574210 is attached hereto as **Exhibit 2**. ACBJ's registration is valid and subsisting.

26.     ACBJ has continuously used the TBBJ Marks in connection with the TBBJ publication since at least as early as December 26, 2003.

27.     As a result of ACBJ's longstanding and continuous use of the TBBJ Marks, the TBBJ Marks have acquired substantial goodwill.

28.     Since its first use of the TBBJ Marks, ACBJ has spent significant resources advertising, developing, and promoting the TBBJ Marks. The TBBJ Marks have become synonymous with high quality publications covering the subject matter of local business communities, breaking news, and annual awards rankings. As a result, millions of consumers in the U.S. (including consumers in the State of Florida) and worldwide instantly associate business publications with ACBJ's distinctive and famous TBBJ Marks.

29.     The TBBJ Marks have become well known in Florida, throughout the U.S., and abroad, as a symbol of ACBJ's goods and services.

30.     Thus, ACBJ has established, through continuous, long-term use in commerce extensive common law trademark rights in the TBBJ Marks.

31.      ACBJ has continuously used the TBBJ Marks in the United States as an identifier of ACBJ as the source and origin of high quality printed and online publications.

32.      ACBJ has expended considerable time, resources, and effort in promoting the TBBJ Marks and developing substantial goodwill associated therewith throughout the United States.

33.      The TBBJ Marks are distinctive and strong when used in conjunction with ACBJ's goods and services.

34.      Due to the continual use of the TBBJ Marks by ACBJ, the TBBJ Marks have come to indicate a single source of goods and services. The TBBJ Marks further have come to indicate ACBJ as the single source of such quality goods and services.

35.      As a result of the long and exclusive use by ACBJ of its TBBJ Marks, the significant volume of sales under the TBBJ Marks, and the large amount of money expended on advertising and promotion of its goods and services, the TBBJ Marks have become, through widespread and favorable public acceptance and recognition, an exclusive asset of substantial value as a symbol of ACBJ, its quality goods and services, and its goodwill.

36.      ACBJ and its use of the TBBJ Marks are well-known and famous.

10

**B.     Defendants' Wanton, Knowing, and Intentional Unlawful Actions**

37.     Defendants have been and are engaged in a pattern and practice of knowingly, intentionally, and willfully infringing ACBJ's trademarks, competing unfairly with ACBJ, engaging in deceptive trade practices, confusing consumers, and interfering with ACBJ's business and existing and prospective business relationships.

38.     Without ACBJ's knowledge or consent, and beginning long after ACBJ had established extensive and valuable goodwill in connection with the TBBJ Marks, Defendants commenced to use, and are currently using, in interstate commerce and commerce affecting interstate commerce, the marks TAMPA BAY BUSINESS WOMAN OF THE YEAR, TAMPA BAY BUSINESS WOMEN, TAMPA BAY BUSINESS WOMEN AWARDS, TBBW TAMPA BAY



BUSINESS WOMEN, and the design mark

(collectively, the "**Infringing Marks**") in connection with the sale, offering for sale, distribution, advertising, and promotion of Defendants' products and services, including without limitation, Defendants' newly launched awards program and

11

associated ticketed awards ceremony (the "**TBBW Awards Program**") and the TBBW Magazine.

39.     Upon information and belief, Defendants' use of the Infringing Marks for the TBBW Awards Program is specifically designed to create an association or suggestion of affiliation between Defendants and ACBJ and trade on the goodwill of ACBJ.

40.     Bello was the former president and publisher of ACBJ's Tampa Bay Business Journal for 11 years.

41.     In her role with ACBJ, Bello had managerial oversight over the TBBJ BUSINESS WOMAN OF THE YEAR awards, such that neither she nor TBBW can claim ignorance of ACBJ's senior rights.

42.     Defendants hired Bello to launch TBBW as its CEO and Publisher in 2018.

43.     Given Bello's former employment with ACBJ—and oversight of the Business Woman of the Year awards, Defendants had actual knowledge of ACBJ, the TBBJ Marks, and the TBBJ Business Woman of the Year awards, long before launching the TBBW Awards Program under the Infringing Marks.

44.     Upon information and belief, Defendants announced the TBBW Awards Program under the Infringing Marks in late 2022, to solicit nominations culminating in a "signature event" to be held in 2023.

45.     Upon information and belief, Defendants solicit nominations for the TBBW Awards Program under the Infringing Marks via Defendants' website located at www.tbbwmag.com ("**Defendants' Website**"), and Defendants' social media pages located at https://www.facebook.com/TBBWMag/, https://twitter.com/tbbwmagazine, https://www.linkedin.com/company/tampa-bay-business-wealth-magazine/, https://www.instagram.com/TBBWMagazine/, and https://www.youtube.com/@tampabaybusinesswealthmaga9682.

46.     According to Defendants' Website, the TBBW Awards Program "is an awards program that honors the women of Tampa Bay who continue to lead and inspire others in our regional business community."

47.     In soliciting nominations for the TBBW Awards Program under the Infringing Marks, Defendants target the same potential honorees that TBBJ recognizes in the TBBJ Business Woman of the Year awards.

48.     Indeed, at least two recipients recognized by Defendants' inaugural TBBW Awards Program were recipients of the TBBJ Business Woman of the Year award in 2023.

49.     Defendants also solicit nominations for the TBBW Awards Program under the Infringing Marks at the same time ACBJ has historically solicited nominations for TBBJ's awards program.

50.     Upon information and belief, Defendants sell advertising and sponsorship packages in connection with the TBBW Awards Program under the Infringing Marks

51.     Upon information and belief, Defendants also sell tickets to the awards ceremony in connection with the TBBW Awards Program under the Infringing Marks.

52.     Defendants' use of the Infringing Marks in connection with the TBBW Awards Program has already caused and will continue to cause actual confusion with ACBJ's TBBJ Marks and prior TBBJ's Woman of the Year Award.

53.     For example, Defendants contacted a nominee of ACBJ's TBBJ Woman of the Year Award to encourage her to submit a packet to be considered for the TBBW Awards Program.  The nominee reached out to ACBJ to inquire whether Defendants' program was associated with ACBJ, as she had already submitted a packet for ACBJ's TBBJ Woman of the Year Award.

54.     Another woman was nominated for Defendants' TBBW Awards Program under the Infringing Marks, and mistakenly believed she was nominated by ACBJ for the TBBJ Business Woman of the Year award:



55.    ACBJ has also been contacted by customers about Defendants'
ticketed event associated with the TBBW Awards Program, mistakenly believing it
that the event was sponsored by or otherwise associated with a ACBJ.

56.    Following Defendants' awards ceremony for the TBBW Awards
Program, various community leaders (including previous and current TBBJ

Businesswoman of the Year honorees), were confused and had posted that they had attended the "Businesswoman of the Year" awards ceremony, rather than Defendants' "Tampa Bay Business Woman" awards ceremony.

57.    Defendants intentionally exacerbate the likely confusion between ACBJs TBBJ Business Woman of the Year award and TBBW Awards Program.  For example, on the same day that ACBJ published a profile on one of its honorees, Defendants posted a profile on the same honoree that was nearly identical.

58.    On January 27, 2023, Defendants used ACBJ's TBBJ Marks to promote the TBBW Awards Program, posting a video titled "2023 Finalists for TBBW's Tampa Bay Business Women of the Year Awards."



59.     Defendants are also using the TBBJ Marks, and specifically, ACBJ's TAMPA BAY BUSINESS WOMAN OF THE YEAR mark, as the name of Defendants' individual category awards for the TBBW Awards Program, including, for example, an award for the "Tampa Bay Technology Business Woman of the Year" and "Overall Tampa Bay Business Woman of the Year."

60.     In fact, Defendants' inaugural recipient of Defendants' infringing "Overall Tampa Bay Business Woman of the Year" award, Rhea Law, was TBBJ's own first Business Woman of the Year, recognized in 2004.

61.     On information and belief, Bello personally took part in, ratified, and/or directed others to adopt the Infringing Marks.

62.     On their Instagram page, Defendants state: "If you want to hear the story on how we came up with the name [for the TBBW Awards Program], as @tampabaybello.  It's a funny one!"  On information and belief, the Instagram handle @tampabaybello is owned by or refers to Bello.



63.     On information and belief, in her role as CEO of Publisher of the TBBW Magazine, Bello was and is actively and personally involved in the wrongful acts giving rise to this action.

64.     On information and belief, Bello was and is a moving, active, conscious force behind Defendants' infringement of the Infringing Marks and other unfair or unlawful acts complained of herein.

65.     On information and belief, Bello personally took part in, ratified, and/or directed others to engage in the infringing or wrongful activity. As a result, Bello is personally liable for the wrongful acts she has committed as alleged herein.

66.     On information and belief, Bello knowingly, personally, and actively participated in, authorized, directed, ordered, controlled, participated, approved, ratified, or agreed-upon Defendants' infringing or wrongful activity.

67.     As CEO and Publisher of the TBBW Magazine, Bello has a direct financial interest in the TBBW Magazine and TBBW Awards Program under the Infringing Marks, and the right and ability to supervise Defendants' activities, including the wrongful acts and for the improper purposes alleged herein.

68.     On information and belief, as CEO and Publisher of the TBBW Magazine, Bello and the other Defendants have an apparent or actual partnership, have authority to bind one another in transactions with third parties, and/or exercise joint ownership or control over Defendants' infringing products and services.

69.    On December 6, 2022, shortly after Defendants announced their new TBBW Awards, ACBJ sent a letter to the TBBW Magazine notifying them of the likely confusion that would result should Defendants proceed with using the Infringing Marks, and demanding that Defendants cease and desist from all use of the Infringing Marks.

70.    Defendant Babcox responded on behalf of TBBW on January 6, 2023, asserting that it is the "majority owner of the Tampa Bay Business & Wealth publication," and refusing to cease use of the Infringing Marks.

71.    ACBJ sent a follow up letter to Babcox on February 9, 2023, again demanding that Defendants cease and desist from all use of the Infringing Marks.

72.    Defendants failed to comply with ACBJ's demands.

73.    Despite ACBJ's express notice that ACBJ objected to and did not authorize Defendants' use of the Infringing Marks in connection with Defendants' goods and services, Defendants have continued to use the Infringing Marks to market Defendants' products and services.

74.    Therefore, Defendants' use of the Infringing Marks in connection with their TBBW Awards Program and associated goods and services has been made notwithstanding ACBJ's well-known and prior established rights in the TBBJ Marks and with both actual and constructive notice of ACBJ's TBBJ Marks under 15 U.S.C. § 1072.

75.    Defendants' continued use of the Infringing Marks constitutes malicious, willful, fraudulent and deliberate infringement.

## C.    HARM TO ACBJ

76.    Upon information and belief, Defendants selected the Infringing Marks solely because of the fame and reputation built up in the TBBJ Marks by ACBJ over many years and at great expense, and Defendants' sole intention in selecting the Infringing Marks was to trade on the goodwill of ACBJ.

77.    The Infringing Marks are confusingly similar to the TBBJ Marks.

78.    Defendants use the Infringing Marks in connection with marketing and providing their goods and services to citizens of Florida and other states, and it advertises their goods and services to citizens of Florida and other states via the Internet and email solicitations.

79.    Through their use of the Infringing Marks, including, but not limited to, on Defendants' Website and social media accounts and in connection with a competing awards program, Defendants seek to unfairly trade off the valuable goodwill and reputation built by ACBJ in its TBBJ Marks.

80.    Defendants are using the Infringing Marks in U.S. commerce in connection with the TBBW Awards Program, TBBW Magazine, and associated goods and services. These goods and services are closely related and identical to the goods and services offered by ACBJ under its TBBJ Marks.

81.     Defendants are using the Infringing Marks without ACBJ's authorization.

82.     Defendants' use of the Infringing Marks is specifically designed to create an association or suggestion of affiliation between Defendants and ACBJ.

83.     Defendants' use of the Infringing Marks seeks to unfairly capitalize on the fame, reputation, and goodwill created by ACBJ and its TBBJ Marks.

84.     Furthermore, Defendants' activities have a substantial effect upon ACBJ's interstate usage of its TBBJ Marks, good will, and sales. The continued, unauthorized use of the Infringing Marks by Defendants would subject the good will and reputation of ACBJ to the hazards of Defendants' business.

85.     Defendants' classes of customers not only overlap with ACBJ's classes of customers but are identical as shown herein. As such, ACBJ and Defendants compete for a common pool of customers.

86.     Defendants' goods and services offered under the Infringing Marks are overlapping and/or closely related to ACBJ's goods and services rendered under its TBBJ Marks.

87.     Defendants' use of the Infringing Marks so resembles ACBJ's TBBJ Marks as to be likely, when used on or in connection with the services identified above, to cause confusion, or to cause mistake, or to deceive.

88.     Defendants' use of the Infringing Marks for goods and services that are identical or closely related to ACBJ's goods and services offered under its TBBJ Marks is without authority or license from ACBJ and creates a likelihood of confusion, deception, and mistake.

89.     Defendants' use of the Infringing Marks in interstate commerce to advertise, promote, and sell their goods and services, including through Defendants' Website and social media pages, was never approved, permitted or endorsed by ACBJ, and occurred after ACBJ had established extensive and valuable goodwill in connection with its goods and services identified by the TBBJ Marks.

90.     Defendants' use of the Infringing Marks in interstate commerce and commerce affecting interstate commerce was and continues to be without ACBJ's consent, and began long after ACBJ had established extensive and valuable goodwill in connection with its goods and services identified by the TBBJ Marks.

91.     ACBJ's first use in commerce of the TBBJ Marks predate Defendants' first use of the Infringing Marks and, therefore, ACBJ has priority over Defendants' first use of the Infringing Marks.

92.     ACBJ's customers, Defendants' customers, and the general public are likely to be misled—and have actually been misled—into believing that Defendants' goods and services provided under the Infringing Marks are provided, sponsored, or approved by ACBJ.

93.     Defendants have infringed ACBJ's TBBJ Marks by various acts, including, without limitation, the advertising, promotion, and provision of the TBBW Awards Program under the Infringing Marks.

94.     Because Defendants' use of the Infringing Marks in interstate commerce and commerce affecting interstate commerce was and continues to be without ACBJ's consent, ACBJ does not control the quality (or lack thereof) of Defendants' goods and services.

95.     Due to Defendants' use of the Infringing Marks to advertise, promote, and sell goods and services of a lesser or unapproved quality than ACBJ's high quality products and services, upon information and belief, the public is likely to associate the lack of quality or lack of prestige in Defendants' goods and services with ACBJ's goods and services.

96.     Defendants' use of the Infringing Marks in connection with Defendants' goods and services has been made notwithstanding ACBJ's well-known and prior established rights in the TBBJ Marks and content and with both actual and constructive notice of ACBJ's registered TBBJ Marks under 15 U.S.C. § 1072.

97.     Defendants' continued use of the Infringing Marks constitutes malicious, willful, fraudulent, and deliberate infringement.

98.     In selecting and using the Infringing Marks in connection with the sale and offering of their goods and services, notwithstanding their actual knowledge

of ACBJ's rights, Defendants have acted and continue to act with wanton disregard for ACBJ's rights, and with the willful intent and purpose of improperly taking or benefiting from the favorable reputation and valuable goodwill which ACBJ has established in the TBBJ Marks.

99.     Defendants' actions have caused and continue to cause Defendants' goods and services to be passed off as made, authorized, sponsored, or endorsed by or otherwise connected or associated with ACBJ and/or the TBBJ.

100.     The Infringing Marks utilized by Defendants are a colorable imitation of and confusingly similar to the TBBJ Marks.

101.     Defendants' activities are likely to cause confusion, to cause mistake, and to deceive consumers and others as to the source, nature, and quality of the goods and services offered by Defendants.

102.     Defendants' wrongful and illegal activities are likely to cause confusion, and to cause mistake, and to deceive consumers and others as to the origin, sponsorship, or approval of the goods and services offered by Defendants with or by ACBJ.

103.     Defendants' infringing activities have caused and, unless enjoined by this Court, will continue to cause, irreparable injury and other damage to ACBJ's business, reputation, and good will of an insidious and continuing sort that cannot

be adequately calculated or compensated in money damages. ACBJ has no adequate remedy at law.

## CAUSES OF ACTION

### COUNT I
### FEDERAL TRADEMARK INFRINGEMENT
### UNDER LANHAM ACT § 32(1)

104.    ACBJ hereby realleges and incorporates by reference the allegations of paragraphs 1 to 93 of this Complaint as if fully set forth herein.

105.    ACBJ is the owner of valid registered TBBJ Marks, as described above.

106.    Defendants have used in commerce a reproduction, counterfeit, copy, or colorable imitation of one or more of ACBJ's registered TBBJ Marks in connection with the sale, offering for sale, distribution, or advertising of Defendants' goods or services on or in connection with which such use is likely to cause confusion, to cause mistake, or to deceive.

107.    Defendants' Infringing Marks are spurious marks that are identical with, or substantially indistinguishable from, one or more of ACBJ's registered TBBJ Marks.

108.    Defendants' use of ACBJ's registered TBBJ Marks and colorable imitations thereof in connection with the advertising and provision of its goods and

services in commerce is likely to cause confusion, or to cause mistake, or to deceive, in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

109.    Defendants' acts of infringement have caused ACBJ damages, and ACBJ seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unauthorized and infringing use of the registered TBBJ Marks, for the damages sustained by ACBJ, for statutory damages (at ACBJ's election), for all costs necessary to remediate the infringing uses and their effects, and for the costs, expenses, and reasonable attorneys' fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

110.    ACBJ seeks an award of punitive and/or treble damages for at least three times the amount of Defendants' profits or ACBJ's damages, whichever is greater, due to the nature of Defendants' willful conduct.

111.    Pursuant to 15 U.S.C. § 1116 and equity, ACBJ is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

112.    Pursuant to 15 U.S.C. § 1118 and equity, ACBJ is entitled to impoundment and destruction of infringing articles.

## COUNT II
## FEDERAL UNFAIR COMPETITION
## UNDER LANHAM ACT § 43(a)

113.    ACBJ hereby realleges and incorporates by reference the allegations of paragraphs 1 to 112 of this Complaint as if fully set forth herein.

114.    ACBJ owns valid registered and common law trademark rights in the TBBJ Marks.

115.    Defendants' use of the Infringing Marks is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with ACBJ, and as to the origin, sponsorship or approval of Defendants' goods and services by ACBJ. Additionally, the public is likely to believe that Defendants' goods and services are provided by, or sponsored by, or approved by, or licensed by, or affiliated with, or in some other way legitimately connected with ACBJ, all to ACBJ's irreparable harm and in violation of 15 U.S.C. § 1125(a).

116.    Defendants have used names and marks which are confusingly similar to ACBJ's TBBJ Marks with the intent to deceive the public into believing that goods and services offered or sold by Defendants are made by, approved by, sponsored by, or affiliated with ACBJ.

117.    Defendants' acts as alleged herein were committed with the intent to pass off Defendants' goods and services as the goods and services of, approved

by, sponsored by, or affiliated with ACBJ, and with the intent to deceive and defraud the public.

118.    Defendants are knowingly infringing the TBBJ Marks in violation of the trademark rights of ACBJ.

119.    Defendants' acts of unfair competition have caused ACBJ damages, and ACBJ seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unfair competition and passing off of ACBJ's goods and services, for the damages sustained by ACBJ, for all costs necessary to remediate the unfair competition and passing off and their effects, and for the costs, expenses, and reasonable attorneys' fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

120.    ACBJ further seeks judgment for three times the amount of Defendants' profits or ACBJ damages, whichever is greater, due to the nature of Defendants' willful conduct.

121.    Pursuant to 15 U.S.C. § 1116 and equity, ACBJ is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

122.    Pursuant to 15 U.S.C. § 1118 and equity, ACBJ is entitled to impoundment and destruction of infringing articles.

## COUNT III
## FALSE ASSOCIATION AND FALSE DESIGNATION OF ORIGIN
## UNDER LANHAM ACT § 43(a)

123.     ACBJ hereby realleges and incorporates by reference the allegations of paragraphs 1 to 112 of this Complaint as if fully set forth herein.

124.     Defendants have caused products and services to enter interstate commerce with the designation and TBBJ Marks connected therewith.

125.     Defendants' use of said designation and other representations constitute a false association and false designation of origin which is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with ACBJ and as to the origin, sponsorship, or approval of such goods and services by ACBJ.

126.     Defendants' acts are in violation of 15 U.S.C. § 1125 in that Defendants have used in connection with its goods and services a false association, a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with ACBJ and as to the origin, sponsorship, and approval of Defendants' goods, services, and commercial activities.

127.     Defendants' acts constitute false association and false designation of origin, and have caused ACBJ damages, including, without limitation, lost profits,

harm to reputation, and costs to remediate the confusion and harm to ACBJ's goodwill and reputation caused by Defendants.

128.    Defendants' acts have caused ACBJ damages, and ACBJ seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unfair competition and passing off of Defendants' goods and services, for the damages sustained by ACBJ, for all costs necessary to remediate the unlawful acts and their effects, and for the costs, expenses, and reasonable attorneys' fees (as this is an exceptional case) incurred in bringing the present action.

129.    ACBJ further seeks judgment for three times the amount of Defendants' profits or ACBJ's damages, whichever is greater, due to the nature of Defendants' willful conduct.

130.    Pursuant to 15 U.S.C. § 1116 and equity, ACBJ is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

131.    Pursuant to 15 U.S.C. § 1118 and equity, ACBJ is entitled to impoundment and destruction of infringing articles.

## COUNT IV
## FLORIDA COMMON LAW TRADEMARK INFRINGEMENT

132.    ACBJ hereby realleges and incorporates by reference the allegations of paragraphs 1 to 112 of this Complaint as if fully set forth herein.

133.    ACBJ first adopted and used the TBBJ Marks as a means of establishing goodwill and reputation and to describe, identify or denominate particular goods and services rendered or offered by it and to distinguish them from similar goods and services rendered or offered by others.

134.    The TBBJ Marks are valid and protectable marks by virtue of its association with such goods and services and ACBJ's state and federal registrations.

135.    Defendants have commenced the use of an identical or confusingly similar mark to indicate or identify closely related services.

136.    As a result, use of Defendants' Infringing Marks at the same time as ACBJ's TBBJ Marks is likely to cause consumer confusion as to the source or as to the sponsorship of the services or goods offered or to be offered.

137.    Defendants' use of ACBJ's TBBJ Marks is without the consent of ACBJ.

138.    Defendants have acted with the knowledge of ACBJ's TBBJ Marks, and with the intent to cause confusion and/or trade on ACBJ's reputation and goodwill.

139.    Defendants' use of the Infringing Marks in connection with its goods and services, as described above, constitutes infringement of ACBJ's rights in its TBBJ Marks pursuant to the common law of the State of Florida, for which

infringement ACBJ is entitled to all remedies available to it under the common law of the State of Florida.

## COUNT V
## FLORIDA TRADEMARK AND SERVICE MARK DILUTION

140.     ACBJ hereby realleges and incorporates by reference the allegations of paragraphs 1 to 93 of this Complaint as if fully set forth herein.

141.     The TBBJ Marks are distinctive and famous marks in the State of Florida within the meaning of Fla. Stat. § 495.151 by virtue of the high degree of inherent and acquired distinctiveness of the TBBJ Marks in this State; the long duration and wide extent of use of the TBBJ Marks in connection with the goods and services with which the TBBJ Marks are used; the long duration and wide extent of advertising and publicity of the TBBJ Marks in this State; the wide geographic extent of the trading area in which the TBBJ Marks is used; the high degree of recognition of the TBBJ Marks in this State in ACBJ and Defendants' channels of trade; and the longstanding federal registrations of the TBBJ Marks.

142.     ACBJ has used its TBBJ Marks extensively throughout this State and this District for nearly 20 years.

143.     Defendants' use of ACBJ's TBBJ Marks, or variants thereof similar to or likely to cause confusion with the TBBJ Marks, has been used in commerce for Defendants' commercial gain.

144.    Even if the Court finds Defendants' use of the Infringing Marks is not likely to cause confusion with ACBJ's TBBJ Marks, Defendants have engaged in dilution by blurring because Defendants' use of the TBBJ Marks, or variants thereof similar to or likely to cause confusion with the TBBJ Marks, has already caused or is likely to cause an association arising from the similarity between Defendants' Infringing Marks and ACBJ's TBBJ Marks that impairs the actual or acquired distinctiveness of ACBJ's TBBJ Marks.

145.    Defendants have engaged in dilution by tarnishment because Defendants' use of the TBBJ Marks, or variants thereof similar to or likely to cause confusion with the TBBJ Marks, has already caused or is likely to cause an association arising from the similarity between Defendants' infringing use and ACBJ's TBBJ Marks that harms the reputation and goodwill associated with ACBJ's TBBJ Marks.

146.    Defendants adopted the Infringing Marks well after the TBBJ Marks became famous.

147.    The Infringing Marks are identical to the TBBJ Marks.

148.    Defendants use the Infringing Marks in commerce.  Such use is commercial in nature.

149.    Defendants' use of the Infringing Marks in connection with their goods and services has caused, or is likely to cause, dilution of ACBJ's TBBJ Marks.

It is likely that the ordinary consuming public in Florida and the Tampa area will make an association arising from the similarity of the marks that impairs the distinctiveness of the TBBJ Marks.

150.    Defendants willfully intended to trade on the recognition of ACBJ and its famous TBBJ Marks.

151.    Defendants' acts have caused ACBJ damages, and ACBJ is entitled to injunctive relief and all other available statutory remedies under Fla. Stat. § 495.151, including, without limitation: Defendants' profits made by Defendants through their unlawful acts; damages sustained by ACBJ; for all costs necessary to remediate the unlawful acts and their effects; and for the costs, expenses, and attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

152.    ACBJ further seeks judgment for three times the amount of Defendants' profits or ACBJ's damages, whichever is greater, due to the nature of Defendants' conduct pursuant to Fla. Stat. §§ 495.151(2) and 495.141.

153.    Pursuant to Fla. Stat. § 495.151(2) and equity, ACBJ is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

154.    Pursuant to Fla. Stat. §§ 495.151(2) and 495.141(1), ACBJ is entitled to impoundment and destruction of infringing articles.

## COUNT VI
## VIOLATION OF FLORIDA DECEPTIVE
## AND UNFAIR TRADE PRACTICES ACT

155.    ACBJ hereby realleges and incorporates by reference the allegations of paragraphs 1 to 154 and Counts I to V of this Complaint as if fully set forth herein.

156.    As alleged herein, Defendants' violations of the Lanham Act and Florida state and common law, including trademark infringement, unfair competition, false association and false designation of origin, and dilution, constitute unfair methods of competition and unfair acts or practices in the conduct of trade or commerce, in violation of Fla. Stat. § 501.204, entitling ACBJ to all remedies available, including damages and reasonable attorneys' fees and costs.

157.    Defendants' violations of the Lanham Act and Florida state and common law, including trademark infringement, unfair competition, false association and false designation of origin, false advertising, and dilution, were known by Defendants to be deceptive and misleading, or through the exercise of reasonable care or investigation could or might have been ascertained to be deceptive and misleading.

158.    Defendants' deceptive and unfair trade practices were conducted with the intent to induce others to rely upon such deceptive and unfair acts and act on them.

159. Defendants' deceptive and unfair trade practices were conducted for the purpose of selling or disposing of personal property or services, or to induce the public to enter into obligations relating to such property or services.

160. Defendants' conduct has misled the consuming public concerning the nature, characteristics, and quality of Defendants' goods and services, to the consuming public's detriment and the detriment of ACBJ's legitimate business enterprise.

161. Such deceptive and unfair acts offend public policy and are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

162. Defendants' actions violate standards of unfairness and deception as set forth and interpreted by federal courts and/or violate 15 U.S.C. §§ 1114, 1125(a) and 1125(c), and Fla. Stat. § 495.151, all of which proscribe unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.

163. By these actions, Defendants have engaged and continue to engage in unfair or deceptive acts and practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* As a result, ACBJ has suffered, and will continue to suffer, damage to its business, reputation, and goodwill.

164. ACBJ has suffered actual damages as a direct and proximate result of Defendants' wrongful, deceptive and unfair trade practices.

165. Defendants' deceptive and unfair trade practices are causing and will continue to cause ACBJ to suffer irreparable harm, for which ACBJ has no adequate remedy at law.

166. ACBJ is entitled to injunctive relief and all other available statutory remedies, including, but not limited to, ACBJ's damages; Defendants' profits; and attorney fees and costs pursuant to Fla. Stat. §§ 501.2105 and 501.211.

167. Further, ACBJ is entitled to injunctive relief against Defendants to stop the illegal conduct.

## COUNT VII
## FLORIDA UNFAIR COMPETITION

168. ACBJ hereby realleges and incorporates by reference the allegations of paragraphs 1 to 167 and Counts I to VI of this Complaint as if fully set forth herein.

169. As alleged herein, Defendants have engaged in deceptive or fraudulent conduct, which is likely to cause, if it has not already, customer confusion in violation of Florida common law.

170. Defendants' actions, as described above, constitute unfair competition under the common law of the State of Florida, in that Defendants' actions constitute federal trademark infringement under the Lanham Act, false

association, false designation of origin, and unfair competition and passing off under the Lanham Act, dilution under Florida statutory law, Florida state and common law trademark infringement and violation of the Florida Deceptive and Unfair Trade Practices Act, entitling ACBJ to all remedies available under Florida law for such unfair competition.

171.    Defendants' actions are likely to cause consumers to believe that Defendants' goods and services originate from the same source as, or are sponsored or approved by ACBJ, or that there is an association, affiliation, or connection between Defendants and ACBJ.

172.    Through Defendants' unauthorized use of the Infringing Marks in connection with Defendants' goods and services in commerce, Defendants have committed trademark infringement, passing off, palming off, imitating, and/or unfair or deceptive practices that are causing or are likely to cause confusion or deception.

173.    Defendants have used in connection with their goods and services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with ACBJ, and to deceive as to the source, sponsorship, approval, or certification of Defendants' goods or services by ACBJ.

174.    Defendants' acts as alleged herein were committed with the intent to deceive and defraud the public in order to gain an increase in its sales, customer base, and share in the business journal and awards program industry.

175.    Defendants are liable to ACBJ for unfair competition under Florida law, because Defendants' conduct is tortious and has deprived ACBJ of customers and other prospects.

176.    Defendants' acts as alleged herein constitute unfair, deceptive, or misleading acts in violation of Florida law. Defendants' acts of unfair competition have caused ACBJ damages, and ACBJ seeks judgment for Defendants' profits made by Defendants' unfair competition, for the damages sustained by ACBJ, for all costs necessary to remediate the unfair competition and their effects, and for the costs incurred in bringing the present action and prior attempts to remedy Defendants' actions.

177.    ACBJ further seeks judgment for punitive damages of at least three times the amount of Defendants' profits or ACBJ's damages, whichever is greater, due to the nature of Defendants' conduct.

178.    Further, ACBJ is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, ACBJ respectfully demands a jury trial, and prays for the following relief against Defendants:

1.      That the Court enter a judgment in favor of ACBJ and against Defendants as to all causes of action alleged herein.

2.      That Defendants and their officers, directors, agents, servants, employees, and all persons in active concert and participation with them, be permanently enjoined from directly or indirectly using ACBJ's TBBJ Marks, or any other mark that is similar in appearance to ACBJ's TBBJ Marks as part of any trademark, service mark, trade name, corporate name, or assumed name; or on the Internet in any domain name, title, description, keyword, source code, tag, banner, link, and any other use for the purpose of directing Internet traffic; or in social media; or in any other manner in connection with business, products, or services within the U.S.

3.      That Defendants be ordered to deliver up for destruction all products, literature, signs, labels, tags, prints, packages, wrappers, containers, fabrics, advertising materials, stationery, and any other items in Defendants' possession or control that bear ACBJ's TBBJ Marks, or any other mark that is similar to ACBJ's TBBJ Marks, and that Defendants be ordered to deliver up for destruction all plates,

molds, matrices, masters, and other means of producing or applying the prohibited content or marks.

4.     That Defendants be ordered to file with the Court and serve on ACBJ, within 30 days after the entry of an injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

5.     That Defendants be required to pay and account to ACBJ for any and all benefits or profits derived by Defendants from the use of ACBJ's TBBJ Marks and any name or mark incorporating any mark, word, designation, name, or domain name that is confusingly similar to the TBBJ Marks, including the sale of any and all products or services associated with any such name or mark, and for all damages sustained by ACBJ by reason of said acts of unfair competition, false designation of origin, and/or other illegal acts complained of herein to the full extent permitted by 15 U.S.C. §§ 1117 and 1125, and Florida statutory and common law.

6.     That ACBJ be awarded statutory damages under 15 U.S.C. § 1117(c) and 15 U.S.C. § 1117(d), should ACBJ so elect.

7.     That, in accordance with the Lanham Act and Florida statutory and common law, ACBJ be awarded punitive and/or treble damages in an amount no less than three times the amount of Defendants' profits or ACBJ's damages,

whichever is greater, increased subject to the principles of equity, due to the wanton, egregious, willful, deliberate, intentional, and/or malicious nature of its actions.

8.    That ACBJ be awarded compensatory damages for Defendants' breaches of contract in an amount to be determined, together with reasonable attorney fees.

9.    That the costs of this action be awarded to ACBJ.

10.    That ACBJ be awarded its reasonable attorney fees due to the exceptional nature of this case and Defendants' intentional, wanton and willful illegal conduct.

11.    That Defendants be liable for any award of monetary damages, treble damages, punitive damages, costs, and/or attorney fees.

12.    That pre-judgment and post-judgment interest be awarded to ACBJ.

That ACBJ have such other and further relief, including without limitation equitable relief, as the Court deems just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

ACBJ demands a trial by jury.

Dated:  May 4, 2023                    Respectfully submitted,

                                        ADAMS AND REESE LLP

                                        /s/ Eric J. Partlow
                                        Eric J. Partlow
                                        Florida Bar No. 556531
                                        Primary: eric.partlow@arlaw.com
                                        Secondary: ann.jones@arlaw.com

                                        100 North Tampa Street, Suite 4000
                                        Tampa, FL  33602
                                        (813) 402-2880 (Telephone)
                                        (813) 402-2887 (Facsimile)
                                        Attorney for Plaintiff

                                        *Attorneys for Plaintiff*